**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-02402-CMA

T.F.,

      Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of Social Security,[1]

      Defendant.

---

**ORDER AFFIRMING DENIAL OF DISABILITY INSURANCE BENEFITS**

---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff T.F.'s application for disability insurance benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court affirms the denial of benefits.

## I.  BACKGROUND

Plaintiff first filed an application for Social Security Disability Benefits under Title II of the Social Security Act on September 13, 2017. (Doc. # 14-5 at 211.)[2] She also protectively filed an application for Supplemental Security Income under Title XVI of the Social Security Act. (*Id.* at 213.) Plaintiff alleged a disability onset date of January 30,

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The exhibits filed at Doc. # 14 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 14-5) and the page number from the Administrative Record (*e.g.*, at 211).

2017, due to Mast cell activation disease, Graves' disease, anxiety, depression, migraines, pancreatitis, vertigo, cervical disc disease, irritable bowel syndrome ("IBS"), and carpal tunnel. (Doc. # 14-6 at 260.) At the time of her application, Plaintiff was 49 years old. (Doc. # 14-5 at 211.)

Plaintiff's applications for disability benefits and supplemental security income were denied on February 12, 2018. (Doc. # 14-4 at 117.) Plaintiff filed a written request for a hearing on March 19, 2018. (*Id.* at 121.) ALJ Kathleen Laub first held a hearing on the matter on March 7, 2019, but the hearing was continued due to missing documents. (Doc. # 14-2 at 68.) The ALJ held a second hearing on August 1, 2019. (Doc. # 14-2 at 72.) Plaintiff testified at both hearings, and an impartial vocational expert, Ashley Bryars, testified at the second hearing. (*Id.* at 46, 72.)

On October 4, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process and denied Plaintiff's request for benefits.[3] (*Id.* at 34.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2017, the alleged onset date. (*Id.* at 23.) At step two, the ALJ found that Plaintiff has several severe impairments, including "Mast cell disease, degenerative disc disease of the cervical spine, and status post remote history of fusion." (*Id.*) The ALJ further noted that "the record reflects hypothyroidism,

---

[3] The five-step process requires the ALJ to determine whether a claimant: (1) has engaged in substantial gainful activity during the alleged period of disability; (2) has a medically severe impairment or combination of impairments; (3) has a condition which meets or equals the severity of a listed impairment; (4) is able to return to his or her past relevant work; and, if not, (5) is able to perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of establishing a prima facie case of disability at steps one through four; the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Graves' disease, headaches/migraines (not intractable), history of acute pancreatitis, status-post bilateral carpal tunnel syndrome release, left foot infection, GERD (gastroesophageal reflux disease), IBS, allergic rhinitis, left knee pain, arthralgia, chronic low back pain, bronchitis, hematuria, benign liver cyst, pervious cholecystectomy, sciatica, and other acute illness/conditions." (*Id.* at 24.) However, the ALJ determined that these impairments were "nonsevere" because they "have either resolved, not lasted 12 months or longer, and/or do not cause more than minimal limitation in the claimant's ability to do work related activities." (*Id.*) The ALJ also determined that Plaintiff's "medically determinable mental impairments of anxiety, PTSD (post-traumatic stress order), and cannabis use disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of impairments listed in the disability regulations. (*Id.* at 25.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work with the following abilities and limitations:

> [S]he can tolerate frequent exposure to extreme cold and pulmonary irritants, such as fumes, odors, dusts, gases or poor ventilation. She must have no contact with latex. She can occasionally climb ladders, ropes and scaffolds and can frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl. She can tolerate occasional exposure to hazards such as heavy mechanical machinery (like a jackhammer or tractor) and unprotected heights.

(*Id.* at 27.)

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a medical secretary and a patient escort because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.* at 33.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

Plaintiff requested review of the ALJ's decision. (*Id.* at 13.) The Appeals Council denied her request for review on June 12, 2020. (*Id.* at 1.) When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. *See Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

Plaintiff initiated the instant action on August 12, 2020. (Doc. # 1.) She filed her Opening Brief (Doc. # 17) on May 13, 2021. The Commissioner filed a Response Brief (Doc. # 20), and Plaintiff followed with her Reply (Doc. # 21).

## II.    LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 217 (1938). Substantial evidence "is more than a scintilla, but less than a preponderance." *Campbell v. Bowen*, 822 F.2d 1518, 1521

(10th Cir. 1987). Thus, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it *de novo*." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted).

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and citing cases). The standard for harmless

error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.   DISCUSSION

Plaintiff contends (1) the ALJ erred at step two by determining that Plaintiff's mental health impairments are not severe; and (2) the ALJ erred in formulating Plaintiff's RFC because the RFC does not sufficiently reflect the symptoms and limitations faced by Plaintiff due to her medically determinable impairments, both severe and not severe. (Doc. # 17 at 7, 10.) The Court will address each argument in turn.

### A.   WHETHER THE ALJ ERRED AT STEP TWO IN EVALUATING PLAINTIFF'S MENTAL HEALTH CONDITIONS

Plaintiff's first argument on appeal is that the ALJ "did not properly support her conclusion" that Plaintiff's mental health impairments are not severe. (*Id.* at 7.) Plaintiff contends that the ALJ erred by improperly relying on "normal" mental status exams and failing to thoroughly discuss substantial controverting medical evidence relating to Plaintiff's mental conditions. (*Id.* at 7–10.)

As an initial matter, the Court notes that Plaintiff fails to adequately identify what, if any, evidence in the record demonstrates that Plaintiff has a severe impairment due to her mental health conditions. Plaintiff's citations to the record are limited at best, and

Plaintiff does not discuss any specific medical evidence that contradicts the ALJ's determination. Nevertheless, the Court has carefully reviewed the administrative record in this case. Based on this review, the Court is satisfied that substantial evidence supports the ALJ's determination that Plaintiff's mental health conditions do not constitute severe impairments and that the ALJ appropriately and thoroughly discussed the relevant medical evidence in making her determination.

     1.   <u>Relevant Evidence Before the ALJ</u>

        a.   *Medical Evidence*

The record demonstrates that Plaintiff received mental health treatment for PTSD, sleep disturbance, anxiety, and panic attacks. *See, e.g.*, (Doc. # 14-11 at 1166.) In May 2017, Plaintiff requested mental health services at the Cheyenne Wyoming Veteran Affairs Medical Center ("VA"). (*Id.* at 1115.) Treatment notes from that time indicate that Plaintiff's PTSD screening test and depression screening were both positive. (*Id.* at 1115–16.) Plaintiff's treatment included individual and group therapy from 2017 through 2019. *See* (Doc. # 14-10 at 967; Doc. # 14-11 at 1069; Doc. # 14-21 at 2906–07.) Several records show that Plaintiff responded well to treatment; for example, a mental health progress note from August 2017 shows that Plaintiff reported numerous changes and was feeling "great." (Doc. # 14-11 at 1067–68.) Mental health status exam records from the VA indicate that Plaintiff had normal exams on several occasions, with consistent reports that Plaintiff demonstrated "linear, logical" thought process, her mood was "euthymic," she had "full range affect," and she was "oriented"

with "no gross memory problems." (Doc. # 14-10 at 851–52) (January 2019); (*id.* at 877–78) (August 2018); (*id.* at 884–85) (July 2018).

Plaintiff also received treatment at SummitStone Health Partners for PTSD, anxiety, and depression beginning in September 2018. (Doc. # 14-21 at 2906.) According to a September 2018 mental status exam, Plaintiff's mood was euthymic, her attitude was pleasant/cooperative, and she was oriented with judgment and insight within normal limits. (Doc. # 14-11 at 1181.) The exam notes also indicate that her immediate and recent memory were "impaired," and her concentration was "fair." (*Id.*) Her treatment plan, as updated in May 2019, included individual therapy one to four times per month and attending Acu-Wellness groups at her housing facility one to four times per month. (Doc. # 14-21 at 2907.)

In addition, the administrative record includes several records from UCHealth relating to treatment for Plaintiff's physical conditions, including her Mast cell disease and pancreatitis. *See, e.g.*, (Doc. # 14-7 at 414). Treatment records from October 2017 show that Plaintiff demonstrated normal mood and affect and normal behavior and was alert and oriented to person, place, and time. (Doc. # 14-18 at 2344.) Notes from March 2018 similarly show that Plaintiff had a normal psychiatric exam, although her mood "appear[ed] anxious." (Doc. # 14-7 at 413–14.) Plaintiff reported she "ha[s] a lot of issues with anxiety PTSD" and that she "feels like the symptoms are stable." (*Id.* at 416, 419.) In June 2019, UCHealth records show that Plaintiff had another exam that demonstrated normal mood, affect, behavior, judgment, and thought content. (Doc. # 14-21 at 2831.)

> b.     *Plaintiff's Testimony*

At the first hearing in March 2019, when asked why she felt unable to work, Plaintiff responded: "Because of my disease that I have. I have many days that I have headaches or migraines. I throw up a lot. I have explosive diarrhea. I have a lot of pain. I have pancreas pain. I have back pain, muscle pain, bone pain." (Doc. # 14-2 at 62.) Plaintiff testified that on good days she tried to do household chores, read, watch documentaries, and "educate [her]self on things." (*Id.* at 62–63.) She reported that she got headaches six days a week, with one or two of them being migraines. (*Id.* at 63.) In addition, Plaintiff said she had "high anxiety" and that she had stopped taking medication specifically for anxiety, but that her Mast cell medication "also treats anxiety." (*Id.* at 65.) Plaintiff testified that she saw a therapist or counselor "once, or maybe twice a week" for anxiety, and that her therapist was "available every day" so Plaintiff could "talk to her right away" if she was having a problem. (*Id.* at 66.) Plaintiff also reported that she did acupuncture therapy every week, and she said that therapy and acupuncture helped her with her anxiety and panic attacks. (*Id.*) Finally, Plaintiff testified that her friends would take her where she needed to go, including grocery shopping, and they would "hang out at [her] house" together. (*Id.* at 63, 67.)

At the second hearing in August 2019, Plaintiff's counsel asked Plaintiff to describe "memory issues and cognition issues" related to her Mast cell disease and PTSD. (*Id.* at 82.) Plaintiff testified that when she was "having issues," she couldn't "think straight" or "remember things." (*Id.*) She testified that she would get confused and

that she had forgotten where she was sometimes. (*Id.*) Plaintiff said that this would

happen "a couple times a week." (*Id.* at 82–83.)

    2.   <u>Analysis</u>

The Commissioner follows a "special technique" to evaluate the severity of

mental impairments and their effect on a claimant's ability to work. 20 C.F.R. §§

404.1520a(a), 416.920a(a); *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013). First,

the ALJ must determine whether a claimant has a medically determinable mental

impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920(a)(b)(1); *Wells*, 727 F.3d at 1068.

The ALJ must next rate the degree of the functional limitation resulting from the

claimant's medically determinable mental impairments in four broad functional areas:

"[u]nderstand, remember, or apply information; interact with others; concentrate, persist

or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3),

416.920a(c)(3). When rating a claimant's degree of limitation, the ALJ uses the following

five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§

404.1520a(c)(4); 416.920a(c)(3). A rating of "none" or "mild" generally leads an ALJ to

conclude that an impairment is not severe "unless the evidence otherwise indicates that

there is more than a minimal limitation in [a claimant's] ability to do basic work

activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

In the instant case, the ALJ determined that Plaintiff has several medically

determinable mental impairments, including anxiety, PTSD, and cannabis use disorder.

(Doc. # 14-2 at 24.) With respect to the first functional area, "understanding,

remembering, or applying information," the ALJ found that the record reflected no

limitation. (*Id.*) Specifically, the ALJ noted that Plaintiff testified that "she reads, watches documentaries, and tries to educate herself," and the medical records demonstrate that Plaintiff "is consistently oriented to person, place and time," her "cognition and memory are normal," and she "has no gross memory problem." (*Id.*)

Next, the ALJ found that Plaintiff also has no limitation with the second broad functional area, "interacting with others." (*Id.*) In support, the ALJ observed that Plaintiff spends times with friends, and medical records consistently show that Plaintiff has "normal mood and affect" and is cooperative. Although the ALJ acknowledged treatment notes reflecting complaints of anxiety and some examination findings of anxiousness, the ALJ noted that other records showed no findings of anxiousness. After discussing the evidence, the ALJ determined that the record as a whole reflects no limitation in interacting with others.

The ALJ next found that Plaintiff has a mild limitation in "concentrating, persisting, or maintaining pace." (*Id.* at 25.) In so determining, the ALJ took note of records that "reflect a mild decrease in interest and ability to focus and mild fatigue." (*Id.*) However, the ALJ also observed that psychiatric exams show that Plaintiff "has a linear and logical thought process" and "is consistently oriented to person, place and time." (*Id.*) Thus, the ALJ found that "the record reflects no more than a mild limitation in concentrating, persisting, or maintaining pace." (*Id.*)

Finally, regarding the fourth functional area, the ALJ found that Plaintiff has no limitation with "adapting or managing oneself." (*Id.*) The ALJ noted that Plaintiff testified that on a good day, she tries to do dishes, clean the floors, read, and watch

documentaries. (*Id.*) Further, the ALJ noted that medical treatment notes consistently describe Plaintiff as neatly and appropriately dressed, with normal behavior. (*Id.*) Accordingly, the ALJ determined that the record reflects no limitation in Plaintiff's ability to adapt and manage herself. (*Id.*) The ALJ concluded that Plaintiff's mental health impairments are not severe because they "cause no more than 'mild' limitation in any of the functional areas **and** the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." (*Id.*)

After reviewing the medical record and the ALJ's written decision, the Court disagrees with Plaintiff that "the ALJ did not properly support her conclusion that [Plaintiff's] mental health impairments were non-severe." (Doc. # 17 at 7.) On the contrary, the ALJ provided thorough and detailed explanations for each of her ratings for the four broad functional areas, drawing both on Plaintiff's own testimony and the medical evidence in arriving at her conclusions. Although Plaintiff contends that the ALJ "should have thoroughly discussed the controverting medical evidence which demonstrated impairment," Plaintiff does not point to any such evidence in the record that the ALJ purportedly failed to discuss. (*Id.* at 10.) Further, an ALJ is not required to discuss **every** piece of evidence in the administrative record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004). Rather, an ALJ must discuss the evidence supporting her decision, the uncontroverted evidence she chooses not to rely upon, and any significantly probative evidence she rejects. *Id.* Applying these principles, the Court finds that the ALJ appropriately discussed the evidence supporting her determination that Plaintiff's mental health conditions do not constitute mental health impairments.

Plaintiff also argues that the ALJ improperly relied on Plaintiff's "normal" mental status exams in assessing Plaintiff's mental health conditions. (Doc. # 17 at 7.) Plaintiff contends that these mental status examinations "should not be considered substantial evidence sufficient enough to outweigh the remaining medical records and [Plaintiff's] own sworn testimony." (*Id.*) The Court disagrees with Plaintiff's characterization that the ALJ weighed the mental status exams over other medical records or Plaintiff's own testimony. Rather, as described above, the ALJ treated Plaintiff's normal mental status examinations as consistent with Plaintiff's testimony regarding her ability to read, watch documentaries, spend time with friends, do household chores, and try to learn and educate herself. See (Doc. # 14-2 at 24–25.) Although Plaintiff alludes to contradictory medical records demonstrating severe mental impairment, Plaintiff does not identify or discuss **any** controverting objective medical evidence allegedly omitted from the ALJ's discussion. Further, the record does not reflect that any of Plaintiff's treating physicians or mental health providers opined that Plaintiff had functional limitations or work restrictions associated with her mental health conditions. For these reasons, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's mental conditions do not constitute severe impairments.

Finally, the Court notes, and Plaintiff concedes, that even if the ALJ had erred by failing to find that Plaintiff's mental health conditions are severe impairments, such error would not require reversal. (Doc. # 17 at 10.) It is settled law in the Tenth Circuit that "[o]nce the ALJ finds that the claimant has **any** severe impairment, [she] has satisfied the analysis for purposes of step two. [Her] failure to find that additional alleged

impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) (unpublished) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007)). Plaintiff argues, however, that the ALJ committed reversible error by failing to include mental limitations in her RFC determination at step four. (Doc. # 17 at 10.) The Court turns next to Plaintiff's arguments relating to the RFC determination.

## B.   WHETHER THE ALJ ERRED AT STEP FOUR IN DETERMINING RFC

Plaintiff contends that ALJ's RFC "does not properly accommodate each of [Plaintiff's] symptoms and limitations caused by her medically determinable impairments." (*Id.*) Specifically, Plaintiff argues that the ALJ erred because the RFC "contains no mental health limitations" and does not account for several of Plaintiff's symptoms and limitations associated with her Mast cell disease, including her brain fog and need for regular bathroom breaks. (*Id.*)

The RFC is an assessment of a claimant's capabilities in a work setting to determine "the most [she] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must assess RFC "based on all the relevant evidence in [the] case record." *Id.* Further, the ALJ's findings regarding the RFC must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). In determining the scope of a claimant's RFC, the ALJ's assessment must "consider all of [a claimant's] medically determinable impairments . . . , including [her] medically determinable impairments that are not severe." 20 C.F.R. § 404.1545(a)(2).

In determining Plaintiff's RFC, the ALJ engaged in a comprehensive analysis of the relevant evidence relating to each of Plaintiff's severe and not severe medically determinable impairments. *See* (Doc. # 14-2 at 27–33.) First, the ALJ discussed Plaintiff's testimony and observed that Plaintiff stated she has "high anxiety," which is treated by her mast cell medication. (*Id.* at 28.) Plaintiff also explained that she sees a therapist for anxiety and gets acupuncture therapy, both of which are helpful. (*Id.* at 28–29.) The ALJ further noted that Plaintiff "testified that she spends time with her friends but does not really go anywhere because she panics about where the bathrooms are." (*Id.* at 29.) In addition, the ALJ acknowledged Plaintiff's testimony that "the mast cell disease and PTSD cause some cognitive issues" and that "sometimes she cannot think straight or remember things and she gets confused." (*Id.*)

After carefully considering the evidence, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, her "statements concerning the intensity, persistent and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) To support her conclusion and the RFC determination, the ALJ fully reviewed the medical evidence and other evidence in the record. Of note, the ALJ observed that "[t]he latest records from April 2019 reflect that the claimant's mast cell disorder is relatively well controlled" with medication. (*Id.* at 30.) Further, the ALJ found that Plaintiff "has largely normal psychiatric exams throughout the record" and that "[m]any exams reflect no anxiousness." (*Id.* at 31.) Although the ALJ acknowledged one exam showing "impaired memory and only fair concentration,"

the ALJ found that this exam was "not consistent with other mental status exams." (*Id.*) After extensively summarizing the relevant evidence in the record, the ALJ found that Plaintiff had no more than none to mild limitations in mental functioning based on her "course of treatment, mental status exams, daily activities, and reports of stable anxiety." (*Id.*) The ALJ also concluded that the RFC "fully accommodated" Plaintiff's severe impairments, including her Mast cell disease. (*Id.* at 29.)

Plaintiff does not dispute that the ALJ assessed all of Plaintiff's medically determinable impairments in determining the RFC. Indeed, Plaintiff states that the ALJ "clearly recognized the GI and cognitive symptoms that [Plaintiff] alleged." (Doc. # 17 at 11.) However, Plaintiff argues that the ALJ erred by failing to include limitations relating to Plaintiff's mental health and her "most significant and repeated health concerns," which are "severe diarrhea, abdominal pain and brain fog or confusion caused by the mast cell disease." (*Id.* at 12.) The Court disagrees. Having reviewed the administrative record and the ALJ's decision, the Court is satisfied that the ALJ appropriately evaluated Plaintiff's mental health conditions and Mast cell disease in formulating Plaintiff's RFC. Further, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record. The Court declines Plaintiff's request to reweigh the evidence, substitute its own judgment for the ALJ's, and formulate the RFC anew. *See White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (stating that a court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency").

Because the ALJ's RFC determination used the correct legal standard and is supported by substantial evidence in the record, the Court concludes that the ALJ did

not err in failing to include more restrictive limitations related to Plaintiff's mental health and Mast cell disease.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED.

DATED:  May 24, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge